# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Ryan Shane, *on behalf of himself and all others similarly situated*,

           Plaintiff,

v.

Bio-Techne Corporation,

           Defendant.

Civ. No. 22-3039 (JWB/ECW)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

---

Nicholas J. Nelson, Esq., and Samuel W. Diehl, Esq., CrossCastle PLLC, counsel for Plaintiff.

Anna F. Barton, Esq., Charles G. Frohman, Esq., Stephanie M. Laws, Esq., Maslon LLP, and Melissa R. Muro LaMere, Esq., Snell & Wilmer, LLP, counsel for Defendant.

---

This case joins the growing collection of litigation over employment practices during the COVID-19 pandemic. As vaccines against the disease became more widely available in 2021, state and federal authorities adjusted safety requirements and public health guidance. Employers across the country responded by implementing employee vaccination requirements, with much of the enforcement culminating in fall 2021. Lawsuits from former employees appeared shortly thereafter.

In this purported class action, Plaintiff Dr. Ryan Shane contends that Defendant Bio-Techne Corporation ("Bio-Techne"), his former employer, discriminated against him based on his religious beliefs and based on a perceived disability, by denying him a religious exemption from the company's mandatory COVID-19 vaccination policy and

terminating his employment for failing to comply with the policy. Because Dr. Shane's only plausible claim is that Bio-Techne failed to accommodate his religion, Bio-Techne's Motion to Dismiss (Doc. No. 11) is granted in part and denied in part.

## BACKGROUND[1]

### I.      Bio-Techne and Dr. Shane

Bio-Techne is a Minneapolis-based biotechnology company that develops and manufactures products used in medical and drug research. (Doc. No. 1, Complaint ¶ 12.) Bio-Techne hired Dr. Shane as a Virologist Lead Scientist in June 2021. (*Id.* ¶ 20.)

Dr. Shane often worked by himself in Bio-Techne's facility, either in his office or a lab. (*Id.* ¶¶ 20, 69.) He interacted with coworkers mostly by email or by phone and did not work directly with customers or vendors. (*Id.* ¶¶ 69, 71.) Dr. Shane would meet weekly with his manager either virtually or in person (while masked and social-distanced when required). (*Id.* ¶ 70.)

### II.      Bio-Techne Announces Vaccination Requirement

In early October 2021, Bio-Techne announced that employees who work at its United States offices or facilities had to be vaccinated against COVID-19 by November 1, 2021. (*Id.* ¶ 26; Doc. No. 15-1 at 1–4.) Bio-Techne planned to "resume normal operations, with all employees working on site" on that date. (Doc. No. 15-1 at 2.) The company expected the U.S. government to require employers like it to have a vaccine requirement in place. (*Id.* at 3.) The announcement informed employees about

---

[1]      The factual background is based on Dr. Shane's Complaint and documents incorporated by reference or embraced by the Complaint.

exemptions: "If you believe that you have a legitimate reason for a legally permitted exemption from this vaccine requirement, please contact your local Human Resources representative as soon as possible." (*Id.*; Compl. ¶ 28.)

## III.   Dr. Shane Requests a Religious Exemption

Dr. Shane was not vaccinated against COVID-19. (Compl. ¶ 68.) He wished to remain that way, so on October 13, 2021, he requested a religious exemption from the vaccine requirement. (*Id.* ¶ 73; Doc. No. 15-1 at 2.) Human Resources emailed him the request form and the message: "We are encouraging employees to complete the form honestly with their sincerely held religious belief/practice so the committee can begin to research those values." (Compl. ¶ 74–75; Doc. No. 15-1 at 2, 30–31.)

After receiving Dr. Shane's request, Human Resources sent him a questionnaire about his work duties, workspace, and proposed accommodations, which he answered. (Compl. ¶ 76, 78–79.) A representative then interviewed Dr. Shane about his beliefs and allegedly stated that religious accommodations were problematic for the business, but Dr. Shane's proposed accommodations were not specifically discussed.[2] (*Id.* ¶¶ 85–86, 91–92.)

## IV.   Bio-Techne Denies Dr. Shane's Request

A few weeks later, Bio-Techne denied Dr. Shane's exemption request by email. (*Id.* ¶ 94.) Bio-Techne acknowledged the sincerity of Dr. Shane's religious objection but

---

[2]      Dr. Shane suggested he could wear a mask and gloves, keep social distance, wash his hands frequently, and clean and disinfect shared instruments and workspaces. (Compl. ¶ 81.) He also offered to take weekly COVID-19 tests at his own expense. (*Id.* ¶ 82.)

decided there was "no sufficiently safe and acceptable accommodation or alternative" to vaccination. (*Id.* ¶ 94–95; Doc. No. 15-1 at 33.) The company informed him that remaining unvaccinated would pose an undue hardship, extra administrative burdens and costs, and an unreasonable safety risk to others:

> Unfortunately, at the present time and based on CDC guidance and prevailing science, there are no accommodations that can make interactions with customers or other employees equally as safe as being fully vaccinated. Accordingly, the Company determined it could not grant your exemption request because your role requires you to have significant interaction with and exposure to other employees, work in shared workspaces with other employees, and attend in-person meetings and presentations.

(Doc. No. 15-1 at 33.)

The email gave a final warning: "In the event you choose to remain unvaccinated, then your final day with the Company will be November 30, 2021, because you will no longer meet the requirements for employment." (*Id.*)

Dr. Shane replied to voice skepticism about Bio-Techne's claimed hardships and to question "why the company has not been willing to consider any potential alternatives" to vaccination. (Compl. ¶ 97.) Bio-Techne responded that it could not implement or monitor Dr. Shane's accommodation compliance to ensure workplace safety. (*Id.* ¶ 98.) Dr. Shane elected to remain unvaccinated and was eventually terminated.

## V.    Dr. Shane Files Suit

Just over a year later, Dr. Shane sued Bio-Techne, alleging that the company never intended to grant his accommodation request and discriminated against him by judging

his religious beliefs to be incompatible with science.[3] (*Id.* ¶¶ 129–30.) He claims the alleged misconduct violates Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I) and the Minnesota Human Rights Act ("MHRA") (Count II). (*Id.* ¶¶ 142, 167.)

Dr. Shane also alleges that Bio-Techne fired him based on its perception that his immune system was deficient without a COVID-19 vaccine. (*Id.* ¶¶ 176–78, 188–90.) He claims this constitutes illegal "regarded as" disability discrimination under the Americans with Disabilities Act ("ADA") (Count III) and the MHRA (Count IV). (*Id.* ¶¶ 179, 191.)

Bio-Techne moves to dismiss Dr. Shane's claims with prejudice. (Doc. No. 11.)

## DISCUSSION

### I.     Motion to Dismiss Standard

To survive a motion to dismiss, a plaintiff must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A recitation of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss, the Court accepts the well-pled allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.

---

[3]     Dr. Shane purports to represent a class of employees (as well as job applicants) that allegedly experienced the same mistreatment. (*See* Compl. ¶¶ 106–119.)

*Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). However, this tenet does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court may also consider materials that are necessarily embraced by the pleadings. *See Schriener*, 774 F.3d at 444.

## II.   Religious Discrimination Claims (Counts I–II)

Dr. Shane claims that Bio-Techne violated both federal and state laws that prohibit employers from failing to hire, discharging, or otherwise discriminating against an individual because of the individual's religion. *See* 42 U.S.C. § 2000e-2(a)(1); Minn. Stat. § 363A.08, subd. 2. Under federal law, "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [the] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The MHRA does not define "religion."

Absent direct evidence of discrimination, the *McDonnell Douglas* framework applies to both Title VII and MHRA claims. *See Said v. Mayo Clinic*, 44 F.4th 1142, 1148 n.6 (8th Cir. 2022); *Maroko v. Werner Enters., Inc.*, 778 F. Supp. 2d 993, 998 n.5 (D. Minn. 2011). Under that framework, "a plaintiff must first state a prima facie case of discrimination, which shifts the burden to the defendant to proffer a legitimate non-discriminatory reason for the challenged action." *Said*, 44 F.4th at 1148 (citation omitted). "If the defendant presents a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the alleged reason was pretext for discrimination." *Id.* (citation omitted).

"[I]ntentional religious discrimination and the failure to reasonably accommodate

an employee's religion are distinct Title VII claims." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1034 (8th Cir. 2008) (citations omitted). Accordingly, the prima facie case "varies depending on the type of employment decision that is challenged." *Gilbert v. MetLife, Inc.*, No. 09-cv-1990 (JRT/JSM), 2011 WL 1843441, at *6 (D. Minn. Mar. 14, 2011) (quoting *Friend v. Gopher Co.*, 771 N.W.2d 33, 37 (Minn. App. 2009)); *see also Lewis v. St. Cloud State Univ.*, No. 04-cv-4379 (RHK/RLE), 2005 WL 3134064, at *5 (D. Minn. Nov. 23, 2005) (recognizing variability of prima facie case requirements in federal age-discrimination case), *aff'd*, 467 F.3d 1133 (8th Cir. 2006).

Since Dr. Shane claims various forms of religious discrimination under both Title VII and the MHRA, the Court will independently analyze each type of claim.

### A. Dr. Shane's only plausible claim is failure to accommodate under Title VII

At oral argument, counsel for Dr. Shane agreed that failure to accommodate is the core of his Title VII and MHRA religious discrimination claims. As discussed below, only the Title VII failure-to-accommodate claim will proceed here.

To establish a prima facie case of religious discrimination for failure to accommodate, a plaintiff must show that he (1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of the conflict, and (3) was discharged for failing to comply with the conflicting requirement. *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997); *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 959 (8th Cir. 1979). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show it offered a reasonable accommodation, or that such an

accommodation would cause undue hardship. *Harrell v. Donahue*, 638 F.3d 975, 979

(8th Cir. 2011); *see also* 42 U.S.C. § 2000e(j).

### 1.  No duty to accommodate religion under the MHRA

As a threshold matter, Dr. Shane's claim for failure to accommodate his religion is

not cognizable under the MHRA. Judge Montgomery of this District recently analyzed

this very issue and found no language establishing a duty to accommodate religion in the

MHRA. *See Tipcke v. Olmsted Med. Ctr.*, No. 22-cv-2470 (ADM/JFD), 2023 WL

2776098, at *3–5 (D. Minn. Apr. 4, 2023) ("While both Title VII and the MHRA prohibit

religious discrimination in employment, only Title VII explicitly requires employers to

provide religious accommodations to employees."). This Court is persuaded by *Tipcke*'s

reasoning. The MHRA expressly prohibits failing to reasonably accommodate "a job

applicant or qualified employee *with a disability*" but does not mention religion. *See*

Minn. Stat. § 363A.08, subd. 6.

At oral argument, counsel for Dr. Shane represented that the Minnesota Court of

Appeals and Judge Kyle of this District both recognized a duty to accommodate religious

beliefs under the MHRA. Perhaps the cases counsel had in mind were *Benjamin v.

County of Hennepin*, No. C8-96-1122, 1996 WL 679690 (Minn. App. Nov. 26, 1996) and

*Maroko v. Werner Enterprises., Inc.*, 778 F. Supp. 2d 993 (D. Minn. 2011). Those courts

both jointly analyzed a failure to accommodate religious practices under Title VII and the

MHRA, but they did so by exclusively citing federal Title VII cases and did not refer to

any MHRA language. *Tipcke*, 2023 WL 2776098, at *4. *Maroko* even noted the absence

of religious-accommodation language in the MHRA. 778 F. Supp. 2d at 998 n.5. And

"[n]either case explains why an employer would be obligated to provide religious accommodation under the MHRA when the language of the statute does not require it." *Tipcke*, 2023 WL 2776098, at *4.

The Court agrees with *Tipcke*'s conclusion that applying Title VII's definition of "religion" to recognize a failure-to-accommodate claim under the MHRA would create an obligation that is otherwise absent. Dr. Shane therefore cannot claim that Bio-Techne failed to accommodate his religion under the MHRA. Accordingly, the Court will analyze only whether Dr. Shane states such a claim under Title VII.

### 2.  No dispute as to prima facie case

Neither party contests Dr. Shane's allegations that (1) he holds a sincere religious belief that conflicts with Bio-Techne's vaccination requirement, (2) he informed Bio-Techne of that belief when he requested and was denied a religious exemption from the requirement, and (3) that his choice to remain unvaccinated was the basis for terminating his employment. Those allegations suffice to establish a prima facie case of failure to accommodate, so the analysis turns to Bio-Techne's undue hardship defense.

### B.  Undue hardship is not clearly established by the pleadings

Under Title VII, an employer cannot deny a reasonable religious accommodation "unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business." 29 C.F.R. § 1605.2(b)(1). Undue hardship is determined case by case but requires an employer to bear more than a de minimis cost. *Brown v. Polk Cnty.*, 61 F.3d 650, 655 (8th Cir. 1995). To determine de minimis cost, courts consider both economic and non-economic costs. *Id.* A claimed hardship must be "real rather than

speculative[,] merely conceivable, or hypothetical" and "cannot be proved by assumptions nor by opinions based on hypothetical facts." *Sturgill*, 512 F.3d at 1033 n.4 (quoting *Brown*, 61 F.3d at 655).

### 1.  A fact intensive inquiry is not appropriate at this stage

Bio-Techne claims that accommodating Dr. Shane would have led to hardships in the form of increased risk of employee exposure to COVID-19, lost federal contracts, and additional administrative costs. In support, Bio-Techne cites CDC guidance regarding the risk of transmission from unvaccinated individuals, as well as Minnesota Department of Health guidance regarding the effectiveness of self-testing. Bio-Techne points to the company's 10-K SEC filing as proof that it is a federal contractor, as well as an executive order and related federal guidance requiring federal contractors' employees to be vaccinated as proof that accommodating Dr. Shane would threaten its federal contracts.[4] Bio-Techne also argues that accommodating Dr. Shane would require increased administrative and logistical effort.

Dr. Shane questions whether the claimed hardships are simply more imagined than real. He cites his own competing sources to show that unvaccinated workers did not carry an increased transmission risk. He argues that Bio-Techne's federal contracts are not certain to have been in jeopardy because it is unclear whether the federal vaccination requirement applied to his position or work projects, and even if it did, the guidance

---

[4]     Executive Order 14042 and the resulting guidance to federal contractors and subcontractors required, in relevant part, "COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation[.]" (*See* Doc. No. 15-1 at 6–10, 12.)

permits religious accommodations. And he claims that *he* would bear the logistical burden for self-testing and other mitigating measures, not the company.

The Court will not go searching outside the complaint for facts clearly establishing an undue hardship, when such a fact intensive inquiry is more appropriate at a later stage. "Ordinarily, courts do not resolve affirmative defenses at the motion-to-dismiss phase unless the applicability of the defense is clear from the face of the complaint." *Spencer v. U.S. Bureau of Prisons*, No. 20-cv-1236 (NEB/KMM), 2021 WL 3426049, at *2–3 (D. Minn. June 1, 2021) (citation omitted), *report and recommendation adopted*, No. 20-cv-1236 (NEB/KMM), 2021 WL 3422397 (D. Minn. Aug. 5, 2021), *aff'd*, No. 21-3490, 2022 WL 1073219 (8th Cir. Apr. 11, 2022); *cf. Van Zee v. Hanson*, 630 F.3d 1126, 1129 (8th Cir. 2011) ("Consideration of materials outside the pleadings is harmless where the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record.").

The Court does not go so far as to say that it needs to have "no doubt" about the undue hardship defense. *See, e.g.*, *Lowe v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 3542187, at *8 (D. Me. Aug. 18, 2022). It suffices that the Court is not convinced that Bio-Techne has clearly established the defense. *See United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1118 (D. Minn. 2010) ("[Affirmative] defenses may only serve as a basis for a motion to dismiss where the complaint *clearly* shows the existence of a defense." (quotation omitted)); *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1065 (D. Minn. 2003) ("[Defendant] has not demonstrated that its affirmative defense presents an insuperable bar to relief.").

11

The Court will not resolve the parties' disputes over science, federal compliance, and administrative logistics to decide Bio-Techne's motion. At this stage, it is not clear that accommodating Dr. Shane would have imposed Bio-Techne's claimed hardships.

### 2. Cases finding increased risk of COVID exposure to be an undue hardship are distinguishable

Bio-Techne cites recent federal cases where the increased risk of COVID-19 exposure served as part of the basis for establishing an undue hardship defense on a motion to dismiss. *See, e.g.*, *Does 1-2 v. Hochul*, No. 21-CV-5067 (AMD) (TAM), 2022 WL 4637843, at *15–16 (E.D.N.Y. Sept. 30, 2022); *Lowe v. Mills*, No. 1:21-cv-00242-JDL, 2022 WL 3542187, at *8–9 (D. Me. Aug. 18, 2022). The factual circumstances of those employers were meaningfully different from Bio-Techne's circumstances here.

*Hochul* and *Lowe* determined that the defendant state-licensed health facilities were certain to violate state requirements by accommodating vaccination exemptions, and certain to face clearly defined consequences for doing so. *See Hochul*, 2022 WL 4637843, at *15 (determining that accommodating the plaintiff's religious objection "would *require* [the defendants] to violate state law" because the applicable law did not include a religious exemption) (emphasis added); *Lowe*, 2022 WL 3542187, at *8 ("[T]here is no dispute between the parties as to what Maine's vaccine mandate requires of designated healthcare facilities and the consequences for such employers, including the Hospital Defendants, if they choose to violate it."). Bio-Techne has not identified a state

or federal law that it would be *required* to violate in order to accommodate Dr. Shane.[5]

Nor has it explained what consequences would be certain to follow such a violation.

*Hochul* additionally determined that the presence of unvaccinated nurses in a nursing home "would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship." 2022 WL 4637843, at *16. Dr. Shane alleges that he worked primarily alone and had one scheduled 30-minute meeting with his supervisor each week. Accepting those allegations as true, Dr. Shane's work environment does not present exposure risks like those in a nursing home or licensed health facility.

Under these circumstances, Bio-Techne's undue hardship defense cannot be resolved at the pleading stage. Discovery may indeed confirm that accommodating Dr. Shane would have led to hardship. Procedurally, summary judgment is more appropriate for resolving that question. *See In re EpiPen Direct Purchaser Litig.*, No. 20-cv-0827 (ECT/TNL), 2021 WL 147166, at *6 (D. Minn. Jan. 15, 2021). Bio-Techne's motion is denied as to Dr. Shane's failure-to-accommodate claim under Title VII.

### C. No allegation sufficient to support direct religious discrimination

To the extent Dr. Shane asserts a separate claim of direct religious discrimination, he fails to adequately plead it. To establish a prima facie case of religious discrimination, a plaintiff must show: (1) they are a member of a protected class because of their

---

[5]     Bio-Techne argues that having Dr. Shane self-test at his own expense would risk violating state requirements for employers to pay for COVID-19 testing required of employees. (Doc. No. 12 at 14.) The Court is not persuaded at this stage that such an arrangement would certainly violate the requirements or certainly lead to consequences.

religious beliefs, (2) they met their employer's legitimate expectations, (3) they suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012); *Feges v. Perkins Restaurants, Inc.*, 483 N.W.2d 701, 711 (Minn. 1992) (stating that final element of prima facie case can be established by showing that plaintiff was replaced by a non-member of the protected class); *see also Goins v. West Grp.*, 635 N.W.2d 717, 722 (Minn. 2001) (determining that liability for disparate treatment depends on if the protected trait "actually motivated" the employer's decision).

Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner. *Gibson*, 670 F.3d at 853–54; *see also Eilefson v. Park Nicollet Health Servs.*, No. A22-0189, 2022 WL 3149256, at *4 (Minn. App. Aug. 8, 2022) (stating that under the MHRA the "circumstances" element can be met by showing that a Christian employee was replaced by a non-Christian employee).

Dr. Shane does not allege that he was replaced by a non-religious worker or by a religious worker who did not request a vaccine exemption. Nor does he allege that Bio-Techne discharged him for any plausible reason other than his non-compliance with a mandatory vaccination policy that applied to all U.S.-based employees.

Some allegations intimate that Bio-Techne designed a sham process "to deter employees from seeking religious accommodations." (*See* Compl. ¶ 29–36.) However, the Court does not find it plausible that Bio-Techne developed a request form and review process, not as a response to newly available vaccines against a novel virus, but as part of

a prejudicial crusade against religion. Dr. Shane writes that "Bio-Techne's leadership and its customers simply did not want unvaccinated employees to be present in their facilities." (Compl. ¶ 38.) Illustrating the deficiency, this paragraph alleges that Bio-Techne wished to exclude unvaccinated employees altogether, not *just* employees who were unvaccinated for religious reasons. As pleaded, Dr. Shane cannot plausibly claim that Bio-Techne treated him and other religious objectors differently from *non*-religious objectors.[6] That component of his Title VII claim (to the extent Dr. Shane means to pursue it) is therefore dismissed with prejudice.

### D.  No basis for improper religious inquiries under Minn. Stat. § 363A.08

The Court also dismisses Dr. Shane's claim that Bio-Techne violated the MHRA by making improper religious inquiries. (Compl. ¶ 157.) The claim fails at the outset because the MHRA prohibits requests for information about religious beliefs "before a person is employed." Minn. Stat. § 363A.08, subd. 4. Dr. Shane alleges that Bio-Techne improperly requested information about his religious beliefs *while* he was employed. Recognizing Dr. Shane's claim would require the Court to ignore the explicit temporal nature of the MHRA's prohibition. The Court will not do so.

Additionally, Dr. Shane purports to represent a "Religious Discrimination Class"

---

[6]     The closest Dr. Shane comes to proper pleading are his allegations that Bio-Techne held a misguided belief that religious objectors could not do their jobs and that customers were requesting that Bio-Techne discriminate against religious objectors. (*See* Compl. ¶¶ 86, 130, 132.) These speculative, conclusory allegations again fall short. It is not plausible that Bio-Techne acted or was pressured by customers because of some concern or misbelief about *religious* objectors specifically, rather than concerns about vaccine objectors generally.

that includes individuals who were "employed by or applied for a position at Bio-Techne." (Compl. ¶ 106(1).) Dr. Shane conclusively alleges that "Bio-Techne has applied these same assumptions, policies, and practices to refuse to accommodate the religious beliefs of unvaccinated job applicants who would work at a Bio-Techne facility in the United States." (*Id.* ¶ 41; *see also id.* ¶¶ 106(3)b., 157, 163, 166.) Setting aside the threshold question of whether an employee can plausibly allege or has standing to claim that misconduct occurred during interviews of job applicants, Dr. Shane's sparse, conclusory allegations are not sufficient to state the claim.

## III.   "Regarded As" Disability Discrimination Claims (Counts III–IV)

An ADA "regarded as" disability discrimination claim requires Dr. Shane to establish that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The MHRA includes parallel language prohibiting "regarded as" disability discrimination. *Maziarka v. Mills Fleet Farm*, 245 F.3d 675, 678 n.3 (8th Cir. 2001).

Since "regarded as" disability discrimination does not depend on limits to life activities, Dr. Shane needs only to plausibly allege that Bio-Techne regarded him as having a physical or mental impairment, as defined under federal or state law.

"The MHRA does not define physical impairment, so Minnesota courts look to federal laws and regulations when construing the MHRA." *Mallon v. U.S. Physical Therapy, Ltd.*, 395 F. Supp. 2d 810, 816 (D. Minn. 2005). The applicable definition lies in 29 C.F.R. § 1630.2(h): "Physical or mental impairment means . . . any physiological

disorder or condition . . . affecting one or more body systems, such as . . . immune."
Thus, Dr. Shane must plausibly allege that Bio-Techne regarded him as having some
physiological disorder or condition affecting his immune system.

Dr. Shane's Complaint surmises that Bio-Techne's awareness of his vaccination
status means it perceived him to have a deficient immune system. But "mere awareness
of an employee's condition is not sufficient to show that the employer regarded the
employee as disabled." *Carlsen v. Green Thumb, Inc.*, No. 01-2076 (JRT/RLE), 2004
WL 234406, at *5 (D. Minn. Feb. 4, 2004) (citing *Hayes v. Blue Cross Blue Shield of
Minn., Inc.*, 21 F. Supp. 2d 960, 972 n.7 (D. Minn. 1998)).

And even if Bio-Techne's awareness of Dr. Shane's vaccination status signified
some perception about his immune system's functionality, Dr. Shane does not explain
how such a perception counts as a physiological disorder or condition. Instead, Dr. Shane
tries to reverse-engineer his vaccination status into an "impairment" by skipping the
definition's "disorder or condition" component and focusing on the alleged effects on his
life (which are not relevant to "regarded as" disability discrimination).

In the end, Dr. Shane does not (and cannot) plausibly allege that Bio-Techne
perceived him as anything more than non-compliant with its vaccination policy, much the
less that it perceived him as having a physiological disorder or condition. Dr. Shane
cannot claim "regarded as" discrimination under either the ADA or the MHRA based on
his vaccination choice. Those claims are dismissed with prejudice.

17

## ORDER

**IT IS HEREBY ORDERED** that Defendant Bio-Techne Corporation's Motion to Dismiss (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    The Court **DENIES** Defendant's motion as to the claim that Defendant failed to accommodate his religious beliefs in Count I of Plaintiff Ryan Shane's Complaint (Doc. No. 1);

2.    The Court **GRANTS** Defendant's motion as to the remainder of Count I, and the remainder of that count is **DISMISSED WITH PREJUDICE**; and

3.    The Court **GRANTS** Defendant's motion as to Counts II, III, and IV of the Complaint, and those counts are **DISMISSED WITH PREJUDICE** in their entirety.

Date: June 9, 2023                        *s/ Jerry W. Blackwell*
                                              JERRY W. BLACKWELL
                                              United States District Judge

18